## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

ANNETTE L. NIKWEI,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        Case No. CIV-16-332-KEW
                                      )
Commissioner of Social                )
Security Administration,              )
                                      )
            Defendant.                )

### OPINION AND ORDER

Plaintiff Annette L. Nikwei (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 46 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a dietary aide. Claimant alleges an inability to work beginning June 18, 2009 due to limitations resulting from COPD, obesity, low back pain, dysthymia, anxiety, personality disorder, and OCD.

### Procedural History

On March 17, 2010, Claimant protectively filed for disability

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on October 28, 2011. By Order and Judgment entered September 30, 2014, this Court reversed the ALJ's decision and remanded the case for further proceedings.

On February 24, 2015, ALJ Edmund C. Werre conducted a second administrative hearing on remand in Tulsa, Oklahoma. Claimant failed to appear but the hearing was conducted with her counsel present. On May 20, 2015, the ALJ issued an unfavorable decision. In a rather detailed letter, the Appeals Council denied review on June 1, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper credibility analysis; and (2) failing to properly consider the medical source evidence.

## Credibility Determination

In his decision, the ALJ found Claimant suffered from the severe impairments degenerative disc disease of the lumbar spine, left knee and ankle impairments, chronic obstructive pulmonary disease ("COPD"), obesity, major depressive disorder, dysthymic disorder, anxiety disorder not otherwise specified, and obsessive-compulsive personality disorder ("OCD"). (Tr. 504). The ALJ determined Claimant retained the RFC to perform light work. She could occasionally lift/carry up to 20 pounds and up to 10 pounds frequently; stand/walk for six hours per day and sit six hours in an eight hour workday. Claimant could not climb ladders, ropes, or scaffolds. She could occasionally kneel, crouch, or crawl with no exposure to temperature or humidity extremes or wetness or irritants such as gases, fumes, and chemicals. The ALJ found Claimant was able to understand, remember and carry out simple and some complex instructions consistent with semi-skilled work and was able to relate and interact with co-workers and supervisors on a work-related basis only with no to minimal interaction with the general

public. Claimant could adapt to a work situation with these limitations/restrictions and her medications would not preclude her from remaining reasonably alert to perform required functions presented in a work setting. (Tr. 506).

After consultation with a vocational expert, the ALJ concluded Claimant could perform her past relevant work as a printed circuit board contact printer. (Tr. 510). Alternatively, the ALJ determined Claimant could perform the representative jobs of agricultural produce sorter, inspector/packer, small products assembler, document specialist, and touch up screener, all of which were found to exist in sufficient numbers regionally and nationally. (Tr. 511). As a result, the ALJ determined Claimant had not been under a disability from June 18, 2009 through the date of the decision. Id.

This Court will address the adequacy of the ALJ's consideration of the medical source opinions first since the ALJ's credibility assessment relies extensively upon the reports of these sources. Claimant contends the ALJ failed to expressly state the weight given to the reports and attendant opinions of the Dr. Adel Malati, a medical consultative examiner, Dr. Kenneth R. Trinidad, a worker's compensation medical evaluator, Dr. Randall Hendricks, a treating orthopedic surgeon, and Dr. Benjamin Benner, a neurosurgeon to whom Claimant was referred in connection with her worker's compensation

case.  While it is true that the ALJ did not reference a weight

given to this opinion evidence, he cited to these opinions for their

consistency with his conclusions as to the extent of Claimant's

limitations resulting from the identified severe impairments.  None

of these opinions gave a more restrictive view of Claimant's ability

to engage in basic work activities than that provided by the ALJ in

the RFC.

The Tenth Circuit has discussed a similar situation and found

> It is the ALJ's duty to give consideration to all the
> medical opinions in the record. He must also discuss the
> weight he assigns to such opinions," including the
> opinions of state agency medical consultants.
> Keyes–Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir.
> 2012)(citations omitted).  But the need for express
> analysis is weakened "[w]hen the ALJ does not need to
> reject or weigh evidence unfavorably in order to
> determine a claimant's RFC."  Id. at 1162.  And an ALJ's
> failure to weigh a medical opinion involves harmless
> error if there is no inconsistency between the opinion
> and the ALJ's assessment of residual functional capacity.
> See id. at 1162–63.  In that case, the claimant is not
> prejudiced "because giving greater weight to [the
> opinion] would not have helped her."  Id. at 1163.

Mays v. Colvin, 739 F.3d 569, 578–79 (10th Cir. 2014).

As a result, the ALJ's omission of an express weight provided

to the referenced medical opinions represents harmless error so long

as the opinions do not conflict with the ALJ's RFC.

Dr. Malati evaluated Claimant on May 10, 2010.  He concluded

in his narrative that Claimant walked in and out of the office

without an assistive device and had a "nice, normal, steady gait." Claimant was able to sit, stand, and lie down without difficulty. She had full range of motion in the neck, shoulders, elbows, wrists, and hands. Her grip strength was good 5/5 and equal bilaterally. She had full range of motion in the back and hops except flexion was limited to 80 degrees. Her knees were limited to 90 degrees flexion bilaterally. Claimant had full range of motion in her ankles. She was able to do heel walking, toe walking, and heel-to-toe walking without difficulty. (Tr. 400). Nothing in this opinion is inconsistent with the ALJ's RFC.

Dr. Trinidad, who evaluated Claimant for her worker's compensation case, originally attended Claimant in March of 2011 after a fall in December of 2010. She complained of constant pain and spasms in her back which worsened with bending, stooping, and lifting. Examination of her right shoulder was unremarkable. No tenderness or spasms of the cervical spine was present. She wore a back brace for her lumbar spine with tenderness from L4 through S1 on the left with particular tenderness over the left sacroiliac joint. Straight leg raising was negative. Her range of motion with in the lumbar spine was reduced. Dr. Trinidad recommended further treatment. (Tr. 479-81).

In October of 2011, Dr. Trinidad found that her condition was stable and maximum medical recover had been achieved. He determined

Claimant "should undergo vocational re-training to place her in a light duty job." (Tr. 696). Claimant is correct that the meaning of a "light duty job" in worker's compensation parlance differs from "light work" as defined by the Social Security regulations. The ALJ, however, cited Dr. Trinidad's opinion for the purpose of showing no inconsistency between his RFC and Dr. Trinidad's medical conclusions. (Tr. 508)("The undersigned notes that Dr. Trinidad opined that claimant would be able to perform light duty work, which is consistent with the above residual functional capacity finding. Additionally, the claimant's complaints regarding bending, stooping, and lifting are accounted for in the limitations in the above residual functional capacity finding."). Nothing in this opinion is inconsistent with the ALJ's RFC.

Dr. Hendricks followed up with Claimant in June of 2011. He noted Claimant had "substantially improved in physical therapy." She complained that the anti-inflammatory medication was upsetting her stomach and the medication was discontinued and substituted. He found Claimant could "return to work at regular duties." (Tr. 768). Again, the opinion was cited as it appeared in the record and was not inconsistent with the ALJ's RFC. (Tr. 508).

Dr. Benner released Claimant in September of 2011 in connection with her worker's compensation case with a fifty pound lifting restriction. He noted that a bone scan revealed increased uptake

in the thoracic and lumbar spines.  He did not feel that there was evidence of a fracture or surgical pathology.  (Tr. 694).  No inconsistency with the RFC exists in this recitation.

The ALJ did weigh the opinions of the non-examining consultative psychological reviewers in his decision.  He afforded "little weight" to the opinions by Dr. Lane Stephens (Tr. 416), Dr. Ron Smallwood (Tr. 422-35), and Dr. Cynthia Kampschaefer (Tr. 444) who found Claimant's mental impairments to be non-severe.  (Tr. 509).  He also gave "great weight" to the opinions of agency physicians, Dr. Kenneth Wainner and Dr. J. Marks-Snelling, whose conclusions on Claimant's physical limitations were consistent with the ALJ's RFC.  (Tr. 436-443, 445, 509).

Indeed, the ALJ found limitations in the RFC which were largely more restrictive than those of the cited opinions which he did not expressly weigh.  Claimant would not have benefitted from further weighing of these opinions.  Moreover, Claimant does not cite to a medical opinion which supported her contention of essentially total disability.  Her hyper technical assertion of error is rejected.

### Credibility Determination

Claimant contends the ALJ failed to properly assess her credibility.  In the first administrative hearing, Claimant testified that she could not work because she slipped and fell and

10

hurt her back, had problems with her left ankle and left knee, and had carpal tunnel in her right and left hands. She also suffered from anxiety and depression. Claimant believed she had a lumbar strain and degenerative disease. (Tr. 41).

Claimant was most comfortable sitting due to back pain and could sit for about 45 minutes, walk for about 10-15 minutes before pain started. (Tr. 42). She experienced balance issues due to her left ankle and knee problems. She spent most of the day with her ankle up and laying down. She also took pain medication. Claimant was five foot four inches tall and weighed 283 pounds. (Tr. 43). Claimant rated her pain around a four or five with medication. She had no problems picking something up off of the floor. She could lift 15 to 20 pounds. (Tr. 44). She sometimes loses her grip on things. She had problems combing her hair due to pain in her wrists. She experienced pain in both hands. She was diagnosed with carpal tunnel but had no surgery for the condition. (Tr. 45).

Claimant testified to breathing difficulties. She had shortness of breath with getting out of bed, going to the bathroom, and walking. She did not sleep well. (Tr. 46). She did not use a machine to aid in breathing while she slept. She must change positions in bed every three or four hours due to pain. She was depressed as a result of the pain. (Tr. 47). She had not been able to keep friends or family and her depression made her eat more. She

11

likes to crochet and listen to music but did not do it for a long time.  She had anxiety which caused her to breathe heavy in public and "feel like [her] head is getting tight."  (Tr. 48).  Her depression and anxiety became more severe when her mother passed away in 2009.  (Tr. 48-49).  Her anxiety also made her lash out and make people not like her.  Her depression "keeps [her] down where [she has] difficulty functioning."  She naps about two hours every day.  (Tr. 49).

Claimant testified she watched television "sometimes" but that her "attention span is not there."  When she performs chores around the house, she does a little bit then sits down.  (Tr. 50).  Her depression affects her ability to take care of her personal hygiene for a week.  (Tr. 51).

Claimant testified that she knew how to drive but had not done it in a long time.  Id.  She did not have a driver's license.  She was house sitting for a friend.  She did housework, cooked, and shopped but did not take care of the yard.  (Tr. 52).

At the second administrative hearing conducted on remand, Claimant failed to appear.  (Tr. 522).  Additional records were admitted by the ALJ through Claimant's counsel.  (Tr. 523-32).

In his decision, the ALJ accurately described Claimant's testimony regarding the extent of her limitations and the effects of her impairments upon her activities.  (Tr. 505).  He concluded,

albeit through disfavored boilerplate language, that her testimony was not entirely credible in light of the objective medical record, which he also cited extensively. (Tr. 506-07).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements.  The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 27th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE